UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TUNC URAZ,

              Plaintiff,                         Case No. 1:19-cv-550

v.                                         Honorable Robert J. Jonker

INGHAM COUNTY JAIL et al.,

              Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

### Discussion

### I.      Factual allegations

Plaintiff is a Turkish citizen who presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. However, the actions about which he complains occurred

while Plaintiff was housed at the Ingham County Jail (ICJ). Plaintiff sues the ICJ and the following ICJ officials: Sheriff Gene Wriggelsworth; Undersheriff Scott Wriggelsworth; and Jail Administrator Sam Davis.

According to the complaint, Plaintiff pleaded guilty to aggravated stalking, Mich. Comp. Laws § 750.411i, on August 23, 2016. At the instruction of his attorney, Plaintiff remanded himself into custody at the ICJ on August 31, 2016, while he was still awaiting sentencing. On September 1, 2016, upon a motion filed by the Ingham County Prosecutor, Ingham County Circuit Judge Clinton Canady, III, issued an order suspending Plaintiff's phone privileges pending sentencing on October 19, 2016, at which point the court would reconsider whether a continued phone restriction was necessary. (*See* 9/1/16 Ingham Cty. Cir. Ct. Order, ECF No. 1-1, PageID.13-14.)

The court's September 1, 2016, order detailed a series of contacts by Plaintiff made in violation of his pretrial release condition that he have no contact with the victim. One of the earlier violations had led to Plaintiff serving three days in jail for contempt of court prior to entry of the plea. In addition, the court held, following Plaintiff's guilty plea on August 23, 2016, but before Plaintiff's report to jail on August 31, 2016, Plaintiff again contacted the victim on August 30, 2016. As a result of the August 30 contact, the court revoked Plaintiff's bond and remanded Plaintiff to jail until sentencing. The court found in its September 1, 2016, order that the victim reported a further contact from Plaintiff on August 31, 2016, after Plaintiff had been lodged in the jail. The entire history formed the backdrop for the court's September 1, 2016, order suspending Plaintiff's phone privileges. (*Id.*)

Plaintiff complains that the only evidence of a phone call after Plaintiff was jailed was the victim's report. Although Plaintiff does not expressly deny making the call, he contends that the jail records show that he could not have made the phone call, due to his jail movements and phone records. Plaintiff also alleges that the jail does not activate phones for new jail arrivals for 24 hours. He therefore contends that the evidence supports a conclusion that he did not make such a call.

To accommodate the court's order barring Plaintiff from the use of a telephone, Plaintiff was placed in solitary confinement between September 1 and September 26, 2015. Plaintiff contends that his solitary confinement amounted to cruel and unusual punishment under the Eighth Amendment and an atypical and significant deprivation under the Due Process Clause of the Fourteenth Amendment. Plaintiff suggests that, because he had been found guilty but was not yet sentenced, he should be considered a pretrial detainee.

Plaintiff also alleges that he was barred from using the telephone until July 13, 2017, well beyond his time in solitary confinement. He complains that, during this time, he was barred from contact with his lawyers, his family, and the Turkish Consulate. Plaintiff acknowledges that he eventually was given a limited ability to speak with members of the Turkish Consulate and his family, but he was ordered to speak solely in English.[1] Plaintiff complains that

---

[1] According to the public records of the Ingham County Circuit Court, on January 31, 2017, Plaintiff was granted visits with consulate officials and mental health providers and limited phone privileges to call his son one time per week for 15 minutes, but all calls were required to be in English, unless Plaintiff paid for an independent Turkish translator of the prosecutor's choice. *See People v. Uraz*, No. 16-001064-FH (Ingham Cty. Cir. Ct.) (Electronic Docket Sheet, No. 20), https://courts.ingham.org/CourtRecordSearch/ROALookup.do?ele=0; *People v. Uraz*, No. 16-001065 (Ingham Cty. Cir. Ct.) (Electronic Docket Sheet, No. 26), https://courts.ingham.org/CourtRecordSearch/ ROALookup.do?ele=1. (Visited August 28, 2019.) No part of the order limited communication with counsel.

his right to confidentially speak with his attorneys and the consulate violated his rights under the First, Sixth, and Fourteenth Amendments.

In addition, Plaintiff claims that, because he had been an upstanding member of the community and an employee of Michigan State University for 25 years before his conviction, he was an easy target for threats, extortion, theft, and jailhouse schemes that put his life and liberty in harm's way. He argues that he was housed with dangerous inmates who extorted commissary goods and money and who conspired to convince Plaintiff to make an attempt on the life of the victim of Plaintiff's stalking. As part of this conspiracy, inmates Charles Allen and Reginald Close allegedly informed the prosecutor or police that Plaintiff wanted his girlfriend killed. Plaintiff was charged in one case with three counts of solicitation of murder, Mich. Comp. Laws § 750.157b(2), and, in the second case, with one count of aggravated stalking. On January 24, 2018, following a jury trial, Plaintiff was convicted of all four offenses. He was sentenced to concurrent prison terms of 16 years and 8 months to 30 years on the solicitation convictions and 3 to 7 years on the aggravated-stalking conviction.

Plaintiff also alleges that Defendants failed to provide a confidential and effective grievance process, preventing Plaintiff from effectively addressing his concerns. Plaintiff alleges that the absence of an effective procedure denied him due process under the Fourteenth Amendment.

For relief, Plaintiff seeks a declaration that Defendants violated his Sixth, Eighth, and Fourteenth Amendment Rights, together with an injunction barring Defendants from violating the Eighth Amendment rights of prisoners in ICJ. He also seeks compensatory and punitive damages.

## II.     Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel (ECF No. 3).  Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Plaintiff's request for appointment of counsel therefore will be denied.

## III.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.     Ingham County Jail / Ingham County

Plaintiff sues the Ingham County Jail. The jail is a building, not an entity capable of being sued in its own right. However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Ingham County.

Ingham County may not be held vicariously liable for the actions of its employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county is liable only when its official policy or custom causes the injury. *Id.*

Plaintiff's allegations against the county essentially rest on a theory of vicarious liability and therefore do not state a claim. *Id.* As the Supreme Court has instructed, to demonstrate that a municipality had an unlawful custom, a plaintiff must show that the municipality was deliberately indifferent to "practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 60. Plaintiff alleges no widespread pattern of unconstitutional conduct. Indeed, he does not even suggest that such a pattern exists. Plaintiff therefore fails to state a claim against Ingham County. Accordingly, the Court will dismiss the Ingham County Jail and, by implication, Ingham County.

## V.    Official-Capacity Claims

Plaintiff's official-capacity claims against Defendants fail for the same reason as his claims against the county itself. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity, in this case, Ingham County.

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties,

responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the Sheriff Gene Wriggelsworth—or any of the other Defendants acting as the Sheriff's designee—has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

As previously discussed, Plaintiff makes no factual allegations supporting the existence of a policy that caused him harm, much less that any Defendant created such a policy. Plaintiff therefore cannot demonstrate that any Defendant is liable in his official capacity.

## VI. Personal-Capacity Claims

Plaintiff also sues Defendants Warden Gene Wriggelsworth, Undersheriff Scott Wriggelsworth, and Jail Administrator Sam Davis in their individual capacities. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were

personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention any individual Defendant in the body of his complaint. His allegations therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, Plaintiff's repeated invocation of "Defendants" in their collective capacity is insufficient to support a claim against any one of the four Defendants. As the Sixth Circuit repeatedly has recognized, "[s]ummary reference to a single, [four]-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for retaliation." *Boxill v. O'Grady*, No. 18-3385, 2019 WL 3849559, at * 3 (6th Cir. Aug. 16, 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("'This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

9

Because Plaintiff alleges no active conduct by any individual Defendant, he fails to state a claim against them.

Further, to the extent that Plaintiff alleges constitutional violations arising out of his phone restrictions, Plaintiff admits that it was the trial court—not any of the named Defendants—who made the decision to impose the restrictions. As a consequence, no basis exists for holding any Defendant liable for that decision.

For all these reasons, Plaintiff has not properly alleged active conduct by an individual Defendant. He therefore fails to state a § 1983 claim against them. However, even had Plaintiff properly alleged active conduct by an individual Defendant, the facts on which he relies do not support an actionable constitutional violation. The Court will consider below each of Plaintiff's alleged constitutional claims, on the merits.

## VII.    Due Process

Plaintiff contends that he was placed in segregation for 25 days without due process of law. He also argues that Defendants denied him due process by either failing to provide an effective grievance process or interfering with his right to use that process. Finally, he argues that, by placing restrictions on his communications, Defendants denied his right to due process.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

The *Sandin* Court concluded that mere placement in administrative segregation for 30 days did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005). Here, Plaintiff alleges only that he was placed in solitary confinement for 25 days. By the terms of *Sandin*, and in the absence of any allegations suggesting that solitary confinement at ICJ was otherwise atypical and significant, Plaintiff fails to state a due process claim based on his placement in solitary confinement.

Moreover, Plaintiff's allegations concerning the shortfalls in the jail grievance process fail to state a claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v.*

*Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Finally, the 10-month limitation on phone privileges did not violate Plaintiff's right to procedural due process, because he did not have a liberty interest in unrestricted telephone use. *See Johnson v. Vroman*, No. 1:06-cv-145, 2006 WL 1050497, at *2 (W.D. Mich. Apr. 19, 2006) (a 6-month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would trigger the protection of the Due Process Clause) (citing *Boriboune v. Litscher*, 91 F. App'x 498, 500 (7th Cir. 2003) (short-term loss of telephone privileges and disciplinary segregation implicated no liberty interest and triggered no due process protection); *Blum v. Fed. Bureau of Prisons*, No. 98-1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999) (protected liberty interest not triggered by restrictions on store privileges, telephone calls, and access to a radio during disciplinary segregation); *Larue v. Blodgett*, No. 95-35936, 1996 WL 228497, at *1 (9th Cir. May 6, 1996) (temporary loss of telephone privileges, possession of a radio and visitation did not meet *Sandin* requirements); *Schmitt v. Mulvey*, No. 04-10717, 2006 WL 516755, at *3 (D. Mass. Mar. 1, 2006) (loss of

television, radio and telephone privileges for a couple of months does not amount to an atypical and significant hardship); *Reyes v. Nash*, No. 05-2136, 2006 WL 361387, at *6 (D.N.J. Feb. 15, 2006) (loss of telephone privileges and disciplinary segregation are not atypical and significant hardships); *Castleberry v. Acker*, No. 05-cv-74271, 2006 WL 250019, at *2 (E.D. Mich. Jan. 31, 2006) (loss of telephone privileges for twenty-four months is not an atypical and significant hardship); *Dumas v. Garnett*, No. 05-210, 2006 WL 149002, at *4 (S.D. Ill. Jan. 19, 2006) (inmates have no liberty interest in telephone privileges); *Rogers v. Justice*, No. 5:05-cv-65, 2005 WL 2860989, at *1 (E.D. Tex. Oct. 31, 2005) (loss of commissary, telephone and visiting privileges does not trigger due process protection); *Harmon v. Buss*, No. 3:05-cv-0060, 2005 WL 2045776, at *1 (N.D. Ind. Aug. 24, 2005) (loss of telephone privileges does not implicate a liberty interest)). "Where an interest is not a protected one, there is no cognizable harm to the individual when deprived of that interest." *Orr v. Hawk*, 156 F.3d 651, 654 (6th Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

For these reasons, Plaintiff fails to state a due process claim.

## VIII.   Eighth Amendment

Plaintiff alleges that his placement in solitary confinement for 25 days amounted to cruel and unusual punishment, in violation of the Eighth Amendment. Alternatively, he contends that, despite having pled guilty to aggravated stalking at the time of his jailing, he should be considered a pretrial detainee and his claim evaluated under the Fourteenth Amendment. In addition, Plaintiff argues that the limitations on his phone privileges between September 13, 2016, and July 27, 2017, amounted to cruel and unusual punishment under the Eighth Amendment.

13

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

The Eighth Amendment is the appropriate standard to be applied to Plaintiff's claim arising out of his 25-day placement in segregation. Having pleaded to and been found guilty of an offense, Plaintiff cannot meaningfully argue that he was a pretrial detainee, despite the fact that

his sentence had not yet been imposed.  As the Supreme Court recognized in the seminal case of

*Bell v. Wolfish*, 441 U.S. 520 (1979):

> where it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment, "[f]or under the Due Process Clause, a detainee must not be punished *prior to an adjudication of guilt* in accordance with due process of law.

*Id.* at 535 (emphasis added); *see also Block v. Rutherford*, 468 U.S. 576, 583 (1984) (recognizing that application of a lesser standard to pretrial detainees turns on the impropriety of imposing "punishment" on those who have not yet been convicted).  By entering a guilty plea that was accepted by the court, Plaintiff waived his right to trial.  His detention, therefore, no longer qualified as "pretrial."

Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 337,); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999).  Although it is clear that Plaintiff was denied certain privileges as a result of his placement in segregation, he does not allege or show that he was denied basic human needs and requirements.  The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation.  *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).  Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury.  *See* 42 U. S.C. §1997e(e); *see also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d

at 795.  As a result, Plaintiff fails to state an Eighth Amendment claim arising out of his 25-day period in segregation.

In addition, Plaintiff fails to state an Eighth Amendment claim arising out of the restrictions placed on his phone privileges for a ten-month period.  Limitations on phone privileges, while unpleasant, do not amount to a denial of basic human needs.  *See Allen v. Alexsander*, No. 2:16-cv-245, 2017 WL 29529029, at *5 (W.D. Mich. July 11, 2017) (citing *Evans*, 427 F. App'x at 443; *Harden-Bey*, 524 F.3d at 795); *see also Pruitt v. Ford*, No. 17-1134-JDT-cgc, 2018 WL 4059491, at *3 (W.D. Tenn. Aug. 24, 2018) (holding that the use of a phone is not a basic human need within the meaning of the Eighth Amendment).  Limitations that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional.  *Rhodes*. 452 U.S. at 347.

Moreover, Plaintiff cannot bring an Eighth Amendment claim for emotional or mental damages because he does not allege a physical injury.  *See* 42 U. S.C. § 1997e(e); s*ee also Hudson*, 503 U.S. at 5; *Harden-Bey*, 524 F.3d at 795.

For all of these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants.

## IX.    First Amendment

Plaintiff alleges that the 10-month restriction on his telephone privileges violated his rights under the First Amendment, presumably under the freedom-of-association clause.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  However, rights inconsistent with proper

incarceration are not retained.  *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001).  As the Supreme Court repeatedly has recognized, freedom of association and assembly are among the rights least compatible with incarceration.  *See Bazzetta*, 539 U.S. at 131 (citing *Jones*, 433 U.S. at 125-26, and *Hewitt*, 459 U.S. 460).  Curtailment of those freedoms "must be expected in the prison context."  *Id.*

As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts.  *See Shaw*, 532 U.S. at 228-29; *Washington v. Harper*, 494 U.S. 210, 224 (1990); *Turner v. Safley*, 482 U.S. 78, 84-96 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones*, 433 U.S. at 125-126. These concerns are even stronger when a state penal institution is involved.  *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998).

Prison officials may enforce a regulation that impinges on a prisoner's constitutional rights if the regulation "is reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89.  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at

de minimis cost to valid penological interests. *Id*. at 89-90. Applying this standard, the Supreme Court has upheld a variety of limitations on First Amendment protections. *See Shaw*, 532 U.S. at 229 (holding that prisoners do not have a First Amendment right to provide legal assistance to other prisoners) (quoting *Pell*, 417 U.S. at 822 (sustaining proscriptions on media interviews)); *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (applying *Turner* standard to a prison ban on certain publications); *Turner*, 482 U.S. at 93 (restricting inmate-to-inmate correspondence). *See also North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. at 133 (upholding prohibition on prisoner labor unions).

After a hearing, the trial court issued an order restricting Plaintiff's telephone privileges, which ultimately was extended to a 10-month period, based on Plaintiff's continued attempts to contact the victim of the offense to which he pleaded guilty, including when he first reported to the jail on August 30, 2016. Additionally, Plaintiff's other conduct on August 31, 2016, led to his being charged and ultimately convicted of three counts of solicitation of the murder of the victim in the aggravated stalking case. The trial court's decision to limit Plaintiff's phone privileges thus was clearly related to legitimate penological purposes.

Moreover, Plaintiff retained some telephone privileges. He acknowledges that he was able to engage in telephone communications with his son and the consulate, though he was required to speak and write in English or to pay for translation services. Plaintiff also had readily available alternative communication methods, such as writing letters and receiving visits.

Further, Plaintiff does not contend that the English-language restriction imposed a hardship on him. He does not dispute that he was fully able to speak in English; indeed, he specifically alleges that he worked for 25 years at Michigan State University, where he would have been required to use English daily. His claim appears to largely depend on his desire to have

telephone conversations and visitations that were not overheard by prison officials. However, as long as notice is provided to inmates, jail and prison officials are permitted to and do routinely monitor telephone and in-person conversations of inmates, except when prisoners are speaking confidentially with their attorneys. *See, e.g., United States v. Houston*, No. 3:13-10-DCR, 2013 WL 5595405, at *8 (E.D. Tenn. Oct. 10, 2013) (upholding the monitoring and recording of jail telephone conversations under the Fourth and Fifth Amendments, in light of warnings to prisoners about such monitoring) (citing cases). The English restriction therefore merely placed Plaintiff in the same position as other inmates.

Finally, the restriction was intended to protect the victim of Plaintiff's offense conviction and to provide a means to foreclose additional violations of the law by Plaintiff. Plaintiff had demonstrated to the satisfaction of the court that, absent such a restriction, he would continue to subject the victim to harassment. Indeed, Plaintiff ultimately was convicted of three counts of soliciting the murder of the victim. Under these circumstances, Plaintiff utterly fails to demonstrate that any lesser restriction would have served the legitimate penological interest to which the phone restriction was addressed.

For all these reasons, Plaintiff cannot state a claim against Defendants for violation of his First Amendment rights.

## X.    Sixth Amendment

Plaintiff alleges that he was denied his Sixth Amendment right to counsel, because the telephone limitation prevented him from calling his attorney.

As with First Amendment rights, restrictions that impair a prisoner's Sixth Amendment right to an attorney are governed by the *Turner* standard: prison officials may enforce a regulation that impinges on a prisoner's constitutional rights if the regulation "is reasonably

related to legitimate penological interests." *See Turner*, 482 U.S. at 89. Courts that have considered the issue regularly have concluded that phone limitations that restrict an inmate's right to call counsel do not result in a Sixth Amendment violation unless the inmate has no other reasonable means to contact the attorney and prejudice resulted. *See Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992) (reversing grant of preliminary injunction on Sixth Amendment claim based on telephone limitations; prisoners were also allowed unlimited correspondence and personal visits with attorneys; prisoners showed no irreparable harm or prejudice); *Jackson v. Coyn*, No. 3:17-cv-P61-DJH, 2017 WL 2389400, at *4 (W.D. Ky. June 1, 2017) (holding that, where a plaintiff does not allege that he was not allowed to contact his lawyer by other methods, such as letters and visits, he fails to state a constitutional violation based on a telephone restriction); *Thompson v. Causey*, No. 1:17-cv-P12-GNS, 2017 WL 1398345, at *2 (W.D. Ky. Apr. 8, 2017) (same); *Stamper v. Campbell Cty.*, No. 2007-49 (WOB), 2009 WL 2242410, at *2 (E.D. Ky. July 24, 2009); *Saunders v. Dickerson*, No. 1:07cv1094(LMB/BRP), 2008 WL 2543428, at *4 (E.D. Va. June 25, 2008) (pretrial detainee whose telephone privileges were suspended while in administrative segregation failed to state a Sixth Amendment claim; detainee could have written to attorney and had personal visits with him, and detainee did not show that alleged denial of access resulted in unfair prejudice), *aff'd*, 313 F. App'x 665 (4th Cir. 2009); *Woods v. St. Louis Justice Ctr.*, No. 4:06-CV-233 CAS, 2007 WL 2409753, at *10 (E.D. Mo. Aug. 20, 2007) (granting summary judgment on Sixth Amendment claim based on denial of unlimited access to telephone to call attorney; other means of access available); *Barr v. Levi*, No. 06-4683, 2007 WL 1410900, at *1-2 (E.D. Pa. May 11, 2007) (dismissing complaint of inmate who alleged that revocation of his telephone privileges violated his right to counsel; plaintiff could communicate with attorney in person or writing); *Cesal v. Bureau of Prisons*, No. 04–CV–281–DLB, 2006 WL 2803057, at *6

(E.D. Ky. Sept. 28, 2006) (rejecting claim by prisoner whose legal calls were limited and monitored; "reasonable limitations on the number and length of such phone calls do not establish a constitutional violation where the prisoner has other, perfectly adequate means of communication"); *Wooden v. Norris*, 637 F. Supp. 543, 553-58 (M.D. Tenn. 1986) (rejecting challenge to constitutionality of inmate telephone system; inmate's access to counsel must be evaluated as a whole). *Cf. Lynch v. Leis*, No. 1:00–CV–274 SJD, 2002 WL 33001391, at *7 (S.D. Ohio Feb. 19, 2002) (granting preliminary injunction on claim that telephone policy which effectively prevented indigent pretrial detainee from contacting attorney for first 20 days of detention violated Sixth Amendment).

Plaintiff utterly fails to allege facts demonstrating that he had no other means of communicating with his attorney or that he suffered prejudice. Plaintiff therefore fails to demonstrate a violation of the Sixth Amendment.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that the complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will deny Plaintiff's motion to appoint counsel (ECF No. 3).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court declines to certify that an appeal would not be in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma*

*pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:   September 11, 2019                    /s/ Robert J. Jonker
                                               Robert J. Jonker
                                               Chief United States District Judge